### THE WATUPPA.

### MORRIS & CUMINGS DREDGING CO., Inc., v. UNITED STATES et al.

### THE WILLIAM H. PRESCOTT.
#### Nos. 16909, 17202.

District Court, E. D. New York.

June 18, 1946.

Hagen & Eidenbach and Nelson J. Johnson, both of New York City, for Morris & Cumings Dredging Co., Inc.

T. Vincent Quinn, U. S. Atty. for Eastern Dist. of New York, and Vincent A. Catoggio, Jr., both of New York City, for the United States.

Mahar & Mason and Frank C. Mason, both of New York City, for McCarren Towing Line, Inc.

INCH, District Judge.

Libellant, owner of the dump scows M.54 and E.R. 20, sues the United States of America, owner of the S.S. Prescott, and the tug Watuppa, McCarren Towing Line, Inc., claimant. The United States of America has brought a cross-action against the tug Watuppa and the McCarren Towing Line, Inc., and both actions were duly tried together.

The controversy arises from a collision between the scows mentioned and the Prescott about two o'clock in the afternoon of September 28, 1943, in the upper New York Bay. The credibility of the eye-witnesses is particularly important as there is no question that the Prescott collided with the scows which were being towed by the Watuppa, tandem fashion by a hawser of approximately 120 feet. The tide was ebb, visibility was good and there was no reason for this collision unless someone was plainly careless. The question is whether the tug Watuppa or the Prescott was solely careless or whether they both were?

The Prescott claims that the tug approached too close to it and that the ebb tide caused the tow to sag down across the bow of the Prescott, which was at that time dead in the water. The tug claims that

there was ample room for it and her tow, which was straight behind her, to pass starboard to starboard, but that the Prescott, as the tug was safely passing her with her tow straight behind her, dropped her starboard anchor while under some headway and backed and that this caused the bow of the Prescott to sheer to starboard with the result that her starboard bow first glanced against the starboard side of the E. R. 20 and later also damaged the following scow M. 54.

While there is considerable testimony, it seems to me that a correct determination of what occurred and caused the collision appears with sufficient clearness for a decision and shows that the collision was due solely to carelessness on the part of those in charge of the Prescott.

The material facts clearly shown by the evidence are that the tug was coming down with the ebb tide at about 3½ knots an hour, her tow, tandem fashion, was straight in line when her pilot saw, approximately a half mile ahead, the Prescott coming up. As they were about head to head the pilot of the tug decided on a port to port passage, but this was not desired by the Prescott as she wished the passage to be starboard to starboard. Accordingly the Prescott blew two whistles which was immediately agreed to by the pilot of the tug.

While there were other vessels such as destroyers in the vicinity it is plain that these did not in any way interfere with the navigation of either vessel, nor was the effect of the ebb tide sufficiently shown to have had any material effect on the tow of the tug. There was ample room between the tug and tow and the Prescott for the agreed upon starboard to starboard passing, approximately 300 feet clearance existed. When, however, the Prescott was about 200 feet from the tug whoever on board of her was responsible for such things gave an order to drop the starboard anchor and shortly thereafter full speed astern.

It is not surprising that this careless maneuver occasioned the emphatic protest of the pilot of the tug, as she passed 300 feet from the Prescott, for the slight headway of the Prescott had been checked by the dropping of this starboard anchor which,

with the effort to go back, meant but one thing, the sheering or swinging of the bow of the Prescott to starboard, causing the subsequent collision by the bow of the Prescott with the barges that had been following straight behind the tug.

The carelessness of those on the Prescott is so clear a cause for the collision that it is unnecessary to speculate on whether the pilot of the tug should have anticipated carelessness of this sort and allowed even more than ample clearance for the passing.

Whether or not the Prescott had a port anchor does not appear, but the dropping of its starboard anchor and the effect of such acts is really not disputed by any of the witnesses. The effort of the Prescott to blame this accident on the presence of other vessels or the effect of the ebb tide does not find support in the evidence.

Accordingly, the libel of the United States is dismissed. The tug Watuppa and her claimant are exonerated, and libellant, owner of the scows, is entitled to a decree against the United States of America.

Submit findings of fact and conclusions of law.